Thomas J. SMITH

v.

ST. TAMMANY PARISH SCHOOL BOARD et al.

Civ. A. No. 15463.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 2, 1969.

Richard B. Sobol, Washington, D. C., George M. Strickler, Jr., Robert Collins, New Orleans, La., for plaintiffs.

Julian J. Rodrique, Asst. Dist. Atty., Covington, La., for School Board.

Joseph Ray Terry, Atty., U. S. Dept. of Justice, New Orleans, La., for the United States.

## OPINION AND ORDER

RUBIN, District Judge.

Last year 15,938 children, 11,924 white and 4,014 black, attended the 32 schools in the ten wards comprising the St. Tammany Parish School System. Because six schools were all-Negro [1] and five were all-white, this Court on February 6, 1969, ordered the school board to modify its plan for the 1969–70 school year and specifically ordered the elimination of the all-Negro schools for the coming school year. In accordance with the discussion in Moore v. Tangipahoa Parish School Board, E.D.La.1969, 304 F.Supp. 244, decided this date, the plan submitted by the school board will be

1. Chahta-Ima School, with a black enrollment of 496 students for 1968–69, had one white child in attendance last year. The enrollment of one white child in a school with 496 black students by no means constitutes desegregation and that school was regarded as being an all-Negro school.

approved to the extent it complies with constitutional requirements.

■ The plan for the 1969–70 school year has eliminated the all-Negro schools. It provides for no schools that will be "predominantly" Negro, and only two schools are expected to have a majority of Negro students. Although the assignment of students to attend schools in the wards they reside in will result in the continuation of Lee Road Consolidated and Sixth Ward Junior High as all-white schools, this results only from residential patterns—not any racial discrimination—and is therefore acceptable. The school board also proposes to continue Pearl River Junior High and Pearl River High as all-white schools. However, a few Negro students do reside within the areas served by those schools. It follows under the law that these two schools must be integrated for the 1969–70 school year, and the most appropriate method of assigning Negro students to those schools appears to be by geographic zoning, the method used by the school board for the desegregation of other formerly all-white schools. The faculties of those two schools, presently all-white, must likewise be desegregated. United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (United States Supreme Court, June 2, 1969). The school board will therefore be required to assign at least two Negro teachers to each of these two schools. In order to facilitate faculty adjustment at these two schools, the Board should select experienced teachers for this assignment.

■ The schools throughout the parish have been operated on a coeducational basis. This coming school year, however, it is proposed that six schools will be segregated by sex. In Ward III Covington Rosenwald, formerly an all-Negro school, will be attended solely by boys of both races in grades 7–9, and Pine View, also a former all-Negro school, will be attended solely by girls of both races in grades 7–9. A similar situation is proposed in Ward VII where boys of both races in grades 1–9 will attend the formerly all-Negro Chahta-Ima School and girls of both races in grades 1–9 will attend the formerly all-white Bayou Lacombe Junior High School. Likewise, in Ward IX the formerly all-Negro St. Tammany High School will be attended solely by boys of both races in grades 6–8 and girls of both races in grades 6–8 will attend the formerly predominantly white Slidell Junior High. The school board offers this proposal only as a transitory measure designed to ease the conversion to a unitary system. For the reasons set forth in Moore v. Tangipahoa Parish School Board, *supra,* the Court will approve this proposal for the 1969–70 school year.

■ Both the plaintiff and the plaintiff-intervenor object to the proposed closing of the all-Negro Folsom Rosenwald School in Ward II which is an adequate school facility. Its displaced students would be assigned to Folsom Consolidated, presently a predominantly white school with a capacity of 350 students. The board's proposal would seriously overtax the facilities of Folsom Consolidated, which has a projected enrollment for the 1969 school year of 523. No valid educational reason exists for abandoning the satisfactory educational facilities of the Folsom Rosenwald School, hitherto identified as black, and requiring its students and faculty to relocate. No such burden is placed upon white students or teachers. Since the proposed closing creates serious problems of overcapacity and cannot be justified on any rational administrative basis, it is inherently discriminatory and therefore invalid. Consequently, the Court will require the school board to keep the Folsom Rosenwald School open and assign students to that school on a non-discriminatory geographic zoning basis.

■ Desegregation of some of the formerly all-white schools is to be accomplished by the assignment of Negroes to those schools on the basis of geographic proximity. The plaintiff objects to this method of assigning Ne-

groes to these schools because white students attending those schools do so through the exercise of freedom of choice. This objection is without merit. Negroes had the same freedom of choice as did the white students. They could have chosen to attend those schools. They did not. It was therefore up to the school board to assign Negro students to those schools in order to effectively establish a unitary system. We find nothing discriminatory in the adoption of this method of assignment for the 1969–70 school year.

Last year there was only minimal faculty desegregation; this was due, in large part, to the fact that there were eleven segregated schools. With the desegregation of these schools, there should be maximum faculty integration this coming school year. The school board plans to integrate the faculties so that the ratio of white to Negro teachers in each school approximates the ratio of white to Negro students in that school. There is no objection by the plaintiff or the plaintiff-intervenor to this method of assigning teachers for the 1969–70 school year, and it will therefore be approved for the coming school year. Plaintiff-intervenor urges, however, in reliance upon United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L. Ed.2d 263 (United States Supreme Court, June 2, 1969), that, in subsequent years, teachers be assigned so that the ratio of white to Negro teachers in each school approximates the ratio of white to Negro teachers in the St. Tammany Parish School System. In accordance with *Montgomery*, the Court will require that teachers be so assigned beginning with the 1969–70 school year.

### ORDER

It is ordered that the St. Tammany Parish School System hereafter be operated as follows:

### I.  GENERAL PROVISIONS

A.  All classroom assignments shall be made on a racially non-discriminatory basis and in such a manner that no class is racially identifiable.

B.  All educational programs, activities, and services, curricular or extracurricular, sponsored, conducted, operated or supported by the St. Tammany Parish School System shall be run on a racially non-discriminatory basis.

C.  All school facilities, recreational areas, and meeting rooms shall be utilized in a non-discriminatory manner.

D.  All school-sponsored organizations shall be run on a racially non-discriminatory basis.

E.  Principals of all schools shall remain in charge of those schools unless reassignment is required for some reason other than race.

F.  In accordance with the plan proposed by the defendants, teacher assignments in each school shall be made so that the ratio of white to Negro teachers in each school approximates the ratio of white to Negro students in that school. However, the defendants shall, in compliance with the decision in United States v. Montgomery County School Board, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (United States Supreme Court, June 2, 1969), make teacher assignments in the 1970–71 school year so that the ratio of white to Negro teachers in each school approximates the ratio of white to Negro teachers in the St. Tammany Parish School System.

G.  Principals, teachers, administrative personnel, members of the professional staff, athletic coaches, and other persons in positions of responsibility or authority shall not be assigned, promoted, demoted, or dismissed on a racially discriminatory basis, nor in any manner that makes a school racially identifiable by the race of its staff. This shall not prevent the school board from failing to continue the employment of any teacher who is not entitled to tenure under state law, so long as its decision is reached without racial discrimination of any kind.

H.  No employee or future applicant for employment in the St. Tammany

Parish School System in any capacity shall be refused employment, hired, fired, promoted, demoted, or assigned on a racially discriminatory basis, nor shall any contract for bus or other services be let or terminated on a racially discriminatory basis.

I. In hiring teachers in the future, the school board shall make every effort to maintain the same approximate ratio of white to Negro teachers, administrators, and athletic coaches as that existing in the 1969–70 school year. This shall not prevent the school board from setting objective criteria for employment or from hiring the personnel best qualified to do a specific job, so long as its decision is reached without racial discrimination.

J. All bus routes shall be planned and the assignment of students to busses shall be made on a racially non-discriminatory basis according to natural transportation patterns. All bus service shall be rendered on a like basis to all students without regard to their race.

K. In accordance with the Jefferson Decree issued by this Court on August 19, 1966:

"The defendants shall provide remedial education programs which permit students * * * who have previously attended all-Negro schools to overcome past inadequacies in their education * * *."

The Superintendent of Schools shall request the assistance of the Educational Resource Center on School Desegregation in developing remedial programs and in obtaining such federal funds as may be available. The Superintendent of Schools shall file a report with the Court, opposing counsel and the Center by August 15, 1969, concerning the programs to be offered in the 1969–70 school year.

L. In-service teacher training programs shall be offered so that teachers may remedy any inadequacies in their preparation, and so that they may be better prepared to deal with the problems arising from school desegregation. Such programs shall be implemented as soon as possible and no later than September 1969. The Superintendent of Schools shall request the assistance of the Educational Resource Center on School Desegregation in developing training programs and in obtaining such federal funds as may be available for them. The Superintendent of Schools shall file a report with the Court, opposing counsel, and the Center by August 15, 1969, concerning the programs that were offered this summer and those that will be offered during the 1969–70 school year.

M. No student shall be prevented from participating in athletic contests, or any other activity, conducted or sponsored by the St. Tammany Parish School System as a result of changes in school or class assignment made to effect this Order.

N. The selection of sites for schools to be constructed in the future, the selection of schools to be enlarged or altered, and all other future construction programs shall effectuate the development and continuation of a unitary school system serving the educational needs of the community without regard to race.

O. The Superintendent of Schools shall report to the Court, opposing counsel, and the Educational Resource Center on School Desegregation by August 15, 1969, and each year thereafter, the number of students by race assigned to each classroom in each grade for all schools in St. Tammany Parish. The report shall also indicate the means used to assign pupils to each school. The report shall indicate the number of teachers, coaches, and administrators of each race assigned to each school, and it shall include the name of the principal of each school in the system, and his race, and the name and race of the assistant principal, if any.

P. With respect to Wards III, VII and IX, where separate education for boys and girls in certain schools has

been approved on a limited basis for 1969–70, the school board shall report its plan for the 1970–71 school year to the Court, opposing counsel, and the Educational Resource Center on School Desegregation no later than March 1, 1970.

Q. Jurisdiction is retained by the Court. Leave is granted all parties to petition from time to time for any improvements or modifications to the plan that might aid in the operation of a racially non-discriminatory, unitary school system.

R. A copy of this Order shall be distributed to every employee of the St. Tammany Parish School Board. Copies shall also be made available to each student and to the parents of each student at each school, and at the school board office.

S. This Order supersedes all Orders previously issued by the Court, except that choice forms already exercised and approved by the school board under the prior orders of the Court for the 1969–70 school year will be recognized to the extent that they will be utilized by the school board in assigning students for the coming school year, provided the assignment of students complies with this Order in all other respects.

## II. SPECIFIC PROVISIONS

The schools in each ward in St. Tammany Parish shall hereafter be operated as follows:

### A. Ward I

1. The Madisonville Rosenwald School shall be closed.

2. The Madisonville Junior High School shall consist of grades 1–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 388 white, 89 Negro.

3. All students in grades 10–12 shall be bussed to Covington High School on the basis of non-discriminatory transportation routes.

### B. Ward II

1. The Lee Road Consolidated School shall consist of grades 1–9. Pupil assignments to this school shall be made on the basis of racially non-discriminatory established transportation routes.

2. The Folsom Rosenwald School shall be opened and shall consist of grades 1–8. Pupil assignments to this school shall be made on the basis of racially non-discriminatory geographic zones and established transportation routes.

3. The Folsom Consolidated School shall consist of grades 1–9 for all students residing in the area served by the school. Pupil assignments to this school shall be made on the basis of racially non-discriminatory geographic zones and established transportation routes.

4. All students in grades 10–12 shall be bussed to Covington High School on the basis of non-discriminatory transportation routes.

### C. Ward III

1. Covington Elementary School shall consist of grades 1–4. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 490 white, 210 Negro.

2. Lyon Elementary School shall consist of grades 1–4. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 237 white, 116 Negro.

3. Covington Junior High School shall consist of grades 5–6. Pupil as-

signments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 313 white, 168 Negro.

4. Covington Rosenwald School shall consist of boys in grades 7–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 291 white, 125 Negro.

5. Pine View School shall consist of girls in grades 7–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 275 white, 118 Negro.

6. Covington High School shall consist of grades 10–12. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 777 white, 300 Negro.

D. *Ward IV*

1. Mandeville Elementary School shall consist of grades 1–4. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 296 white, 87 Negro.

2. Mandeville Middle School shall consist of grades 5–6. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 144 white, 45 Negro.

3. Mandeville High School shall consist of grades 7–12. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 467 white, 102 Negro.

E. *Ward V*

1. Fifth Ward School shall consist of grades 1–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 254 white, 48 Negro.

2. All students in grades 10–12 shall be bussed to Covington High School on the basis of racially non-discriminatory transportation routes.

F. *Card VI*

1. Sixth Ward Junior High School shall consist of grades 1–9. Pupil assignments to this school shall be made on the basis of racially non-discriminatory established transportation routes.

2. All students in grades 10–12 shall be bussed to Covington High School on the basis of non-discriminatory transportation routes.

G. *Ward VII*

1. Chahta-Ima School shall consist of boys in grades 1–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 220 white, 217 Negro.

2. Bayou Lacombe Junior High School shall consist of girls in grades 1–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the

projections submitted by the school board: 159 white, 183 Negro.

3. All students in grades 10–12 shall be bussed to Mandeville High School or Slidell High School on the basis of racially non-discriminatory established transportation routes.

### H. *Ward VIII*

1. Alton Junior High School shall consist of grades 1–8. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 200 white, 221 Negro.

2. Pearl River Junior High School shall consist of grades 1–8. Pupil assignments to this school shall be made on the basis of racially non-discriminatory geographic zones and established transportation routes. At least two experienced Negro teachers shall be assigned to this school.

3. Pearl River High School shall consist of grades 9–11. Pupil assignments to this school shall be made on the basis of racially non-discriminatory geographic zones and established transportation routes. At least two experienced Negro teachers shall be assigned to this school.

4. Boyet Junior High School shall consist of grades 1–9. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 513 white, 34 Negro.

5. All students in grade 12 shall be bussed either to Covington High School, Mandeville High School, Slidell High School or Salmen High School on the basis of racially non-discriminatory transportation routes.

### I. *Ward IX*

1. Florida Avenue School shall consist of grades 1–5. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 689 white, 172 Negro.

2. Carolyn Park School shall consist of grades 1–5. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 472 white, 118 Negro.

3. Southside School shall consist of grades 1–5. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 560 white, 140 Negro.

4. Slidell Elementary School shall consist of grades 1–5. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 440 white, 110 Negro.

5. St. Tammany High School shall consist of boys in grades 6–8. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 675 white, 169 Negro.

6. Slidell Junior High School shall consist of girls in grades 6–8. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 675 white, 169 Negro.

7. Salmen High School shall consist of grades 9–12. Pupil assignments to this school shall be made on a racially

non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 739 white, 185 Negro.

8. Slidell High School shall consist of grades 9–12. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 840 white, 210 Negro.

### J. *Ward X*

1. Abita Springs Elementary School shall consist of grades 1–8. Pupil assignments to this school shall be made on a racially non-discriminatory basis so that the ratio of white to Negro students in the school is approximately in accordance with the projections submitted by the school board: 254 white, 16 Negro.

2. All students in grades 9–12 shall be bussed to attend school in another ward on racially non-discriminatory transportation routes.

### III. APPENDIX

The school board is urged to appoint one or more biracial committees in each ward composed of parents, teachers, and recognized community leaders of both races. These committees should consider and make recommendations about such matters as changes in school names, revision of the grading system, improvement of school facilities including libraries, means of easing tension in the community, ways to make desegregation work more effectively, programs that parents may participate in, and possible solutions to problems that may arise due to school desegregation. The committees should have no authority to make decisions of any kind, and their formation shall not in any way deprive the school board of any power given it by state law, or any duty imposed on it by state law, or by the United States Constitution.