Thomas J. SMITH et al.

v.

ST. TAMMANY PARISH SCHOOL BOARD, a Corporation, and I. F. Parker, President and William Pitcher, Superintendent.

Civ. A. No. 15463.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Aug. 21, 1970.

George M. Strickler, Jr., Stanley Halpin, New Orleans, La., for plaintiffs.

Julian J. Rodrigue, Asst. Dist. Atty., 22nd Judicial Dist., Parish of St. Tammany, La., for defendants.

## MEMORANDUM OPINION
## AND ORDER

HEEBE, District Judge:

This cause came on for hearing on a previous day on the motion of the plaintiffs for supplemental relief and for modification of the Court order. Plaintiffs seek supplemental relief in the form of an injunction requiring the defendant school board, its employees and agents to remove from the system's schools, and in particular from Covington High School, all Confederate battle flags and any other symbols or indicia of racism displayed by the faculty or staff of the schools and prohibiting the official display of such flags or symbols at all school functions, and further prohibiting defendants, their employees and agents, from taking any disciplinary action against any students as a result of protests against the continued display of Confederate battle flags at Covington High School.

Plaintiffs further seek modification of this Court's order of July 2, 1969, by the addition of the following paragraphs to the "General Provisions" of that order:

"All Confederate flags, banners, signs expressing the school board's or its employees' desire to maintain segregated schools, and all other symbols or indicia of racism shall be removed from the schools and shall not be officially displayed at school functions of any kind. This shall not prevent individual students from wearing or displaying buttons, signs, or symbols.

"Bi-racial committees shall be formed for each ward of the parish prior to the beginning of the 1970–71 school year. Half the members of each committee shall be chosen by the school board and half by the Negro community in each ward. These committees should consider and make recommendation on such matters as

means of easing tension in the community, ways to make desegregation work more effectively, and solution to racial problems arising in the schools. The board shall report to the Court and to counsel for the plaintiffs and the United States by September 1, 1970, the names and race of the members of each committee."

and by the addition of the following provision to paragraph C(6) of the "Specific Provision" of the order:

"Prior to the 1970–71 school year a Negro Assistant Principal shall be appointed for Covington High School."

Prior to the 1969–70 school year, the St. Tammany Parish School Board operated a racially segregated dual school system. In February 1969 we ordered the school board to formulate a plan for a racially unitary school system to be effective for the 1969–70 school term. On July 2, 1969, the Court entered an order which approved in most respects a plan submitted by the board pursuant to the February order.

▪▪▪▪ The language and intent of the Court's order was and is crystal clear. Not only is the school board to operate a unitary system but the system must be racially non-discriminatory. This Court does not intend to act as an administrator of schools. However, we can and must prohibit racial discrimination in the operation of the school system. The right to operate schools in any manner it sees fit belongs to the school board as long as the operation does not violate the Constitution. Concomitant with this right is the constitutional duty to effectively establish a unitary school system in every respect. See United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (1969); Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968) and Hall v. St. Helena Parish School Board, 417 F.2d 801 (5th Cir. 1969).

The principal of Covington High School displays a Confederate battle flag in his office next to the American flag and the Louisiana State flag. Some of the Negro students at Covington High requested that the Confederate flag be removed from the principal's office, as well as from any other place in the school. Their request was not honored, and subsequently the Negro students protested against the continued display of the Confederate battle flag at Covington High School.

▪▪▪▪ The Confederate battle flag, since the decision by the U. S. Supreme Court on May 17, 1954 in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I), has become a symbol of resistance to school integration and, to some, a symbol of white racism in general. In this connection, the principal of the Covington High School understands today's symbolism of the Confederate battle flag as well as he understands the symbolism of a Black Panther or a Black Power flag. But none of these flags are constitutionally permissible in a unitary school system where both white and black students attend school together. At the moment, the Covington principal insists on the display of the Confederate battle flag; but the display of that flag is an affront to every Negro student in the school, just as the display of the Black Panther flag would be an affront to every white student in a school whose principal was a Negro. In *Green, supra,* at 437–438, 88 S.Ct. at 1694, the Supreme Court stated:

"School boards such as the respondent * * * were * * * clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch."

The retention of Confederate flags in a unitary school system is no way to eliminate racial discrimination "root and branch" from the system. The Confederate battle flags *must* be removed from

all schools in the St. Tammany Parish school system. Accordingly,

It is the order of the Court that the previous order of this Court dated July 2, 1969, be, and the same is hereby, amended by adding the following to the "General Provisions" of that order:

"All Confederate flags, banners, signs expressing the school board's or its employees' desire to maintain segregated schools, and all other symbols or indicia of racism shall be removed from the schools and shall not be officially displayed at school functions of any kind. This shall not prevent individual students from wearing or displaying buttons, signs, or symbols."

"A Bi-racial committee shall be formed prior to October 10, 1970. The bi-racial committee will be composed of two members from each ward of the parish, one member to be chosen by the school board and one member by the Negro community in each ward. The chairmanship is to alternate annually between a white chairman and a Negro chairman. The membership must be divided equally between whites and Negroes. This committee should consider and make recommendations on such matters as means of easing tension in the community, ways to make desegregation work more effectively, and solution to racial problems arising in the schools. The board shall report to the Court and to counsel for the plaintiffs and the United States by November 1, 1970, the names and race of the members of each committee. The bi-racial committee is to make bi-annual reports—on December 15 and April 1 of each year—to the Court on the maintenance of a unitary school system."

It is further ordered that the previous order of this Court dated July 2, 1969, be, and the same is hereby, amended by adding the following provision to para-

graph C(6) of the "Specific Provision" of the order:

"on or before September 10, 1970, a Negro Assistant Principal shall be appointed for Covington High School."