**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**HINDS COUNTY SCHOOL BOARD et
al., Defendants-Appellees.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**AMITE COUNTY SCHOOL DISTRICT et
al., Defendants-Appellees.**

**Nos. 28030, 28042.**

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1977.

Jack Greenberg, Melvyn R. Leventhal, New York City, Fred L. Banks, Jr., Jackson, Miss., J. Stanley Pottinger, Asst. Atty. Gen., Civ. Rights Div., Dept. of Justice, Washington, D. C., Thomas M. Keeling, Jeremiah Glassman, Civ. Rights Div., Education Sect., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Thomas H. Watkins, Jackson, Miss., H. Bradford Miller, Liberty, Miss., for defendants-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Plaintiff, the United States of America, appeals from the district court's recommendation to this court that defendant, Amite County School District, be permitted to maintain a sex-segregated student assignment plan among the four schools which comprise the district. The recommendation of the district court was based on its findings that Amite County's assignment plan resulted from sound educational purposes as opposed to racially discriminatory objectives. While the appeal was pending in this court, Congress passed the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.* (EEOA), which prohibits states from denying equal educational opportunity on the basis of race, color, sex, or national origin. We ordered Amite County to show cause why the EEOA does not mandate discontinuance of student assignments on the basis of sex, and it has now

complied with our order. We hold that the EEOA prohibits Amite County's present assignment plan, and we remand the case to the district court with directions to fashion an appropriate remedy as required by the EEOA.

## I. Factual and Procedural Background

The Amite County School District case is 1 of 30 school desegregation cases involving school districts in the Southern District of Mississippi which were consolidated in this court. *United States v. Hinds County School Board*, 423 F.2d 1264, 1266 (5th Cir. 1969). On November 7, 1969, a panel of this court ordered Amite County to implement a desegregation plan submitted by the Office of Education of the United States Department of Health, Education, and Welfare (HEW). *Id.* at 1267. Amite County moved to amend HEW's plan so that it would permit sex-segregated student assignments to four schools in its district.[1] On December 10, 1969, the panel approved Amite County's modified plan as an interim emergency measure to stabilize the education process in its school district for the remainder of the 1969–1970 school year.[2] In its order, the panel noted that the validity of the modified plan as a permanent measure depended upon the school district's motivations in developing it, specifically, whether racial discrimination was the motivation for the plan or it had its basis in educational purposes. The panel concluded that such a determination could best be made at a hearing conducted by the district court.

At the close of the 1969–1970 school year, Amite County petitioned the district court for a hearing and moved that its sex-segregated student assignment plan be continued. The district court conducted its hearing on June 24, 1970, at which Miss Annie Andrews, superintendent of Amite County School District for the previous 23 years, was the only witness. On July 14, 1970, the district court entered its findings of fact and recommendation, concluding that "the separation by sex plan stems from sound educational purposes as distinguished from racially discriminatory purposes."[3]

On August 6, 1970, a panel of this court deferred ruling on the district court's findings and recommendation, pending receipt of October 15, 1970 and April 15, 1971 statistical reports from Amite County. The panel permitted it to continue to assign students for the 1970–1971 school year on the basis of sex.[4] Amite County continued to submit similar reports for each successive school term, and the sex-segregated student assignment plan was carried forward.

On December 30, 1974, the United States filed with this court a supplemental brief in which it argued that Amite County's sex-segregated assignment plan was proscribed

---

1. Prior to the submission of HEW's plan to this court, five schools made up the Amite County School System. Crosby Attendance Center comprised grades 1–6 and the other four schools, Amite County Training and Central (both all-black) and Gloster and Liberty Attendance Centers (both all-white) comprised grades 1–12. The submitted plan provided that the Crosby Attendance Center be closed.

2. Under the modified plan, male students were permitted to attend either Amite County Training or Central, whichever was nearer to the student's residence. Female students were permitted to attend either Gloster or Liberty Attendance Centers, whichever was nearer to the student's residence.

3. The district court entered specific findings that: (1) the separation of the students by sex had produced a unitary school system; (2) the achievement level of the male students had shown substantial improvement with no lessening in the level of the female students' improvement; (3) attendance levels of all students had improved; (4) normal disciplinary problems in school buildings and on busses and playgrounds had declined; (5) motivation of students and teachers had improved, with measurably improved leadership qualities on the part of the male students; and (6) the stability of the entire school operation under the modified plan resulted in increased attendance by white students and in better cooperation of the community as a whole.

4. On August 5, 1970, the panel granted the motion of the N.A.A.C.P. Legal and Educational Defense Fund, amicus curiae, for leave to supplement the record to include petitions filed by black parents whose children attend schools within Amite County which express their unqualified opposition to sex separation as a basis for student assignment. Their petitions are a part of this record.

by the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*, and that Amite County should be ordered to implement a desegregation plan that provides for a unitary school system which does not separate students on the basis of sex. On June 2, 1975, the court ordered Amite County to show cause why the EEOA did not mandate discontinuance of their sex-segregated assignment plan. Amite County briefed and submitted this issue to the court on June 30, 1975. At one point this court was advised that the United States would attempt to undertake settlement negotiations with Amite County. We have since been informed by counsel for both sides that these efforts were unsuccessful and that settlement negotiations are not taking place. We now proceed to the merits.

## II. The Equal Educational Opportunity Act of 1974

 Although Congress did not adopt the EEOA until after this court had approved Amite County's temporary use of a sex-segregated assignment plan and the district court had entered its findings and recommendations, an appellate court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Nowhere does the EEOA provide or its legislative history suggest that it is not to be applied to cases pending at the time of its adoption. In determining whether its application will result in a manifest injustice, we must examine "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

Here the United States has instituted this action to ensure that Amite County properly discharges its constitutional and statutory obligations of maintaining a nondiscriminatory educational system, a matter of "great national concern" which must be decided under existing laws. *Id.* at 719, 94 S.Ct. at 2020, *quoting United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49, 51 (1801). Amite County could not expect that it had a right to maintain a sex-segregated school system. When we permitted temporary use of its modified plan, we expressly noted that our order was "an interim emergency measure to stabilize the education process in this school district . . . [and] is not to be construed as a precedent except in the exigencies" which then confronted the school district. Nothing this court has done before or since may be construed as permanently approving this type of student assignment.[5] Because Amite County was fully cognizant that this court's approval of its student assignment plan was only temporary, our determination that its sex-segregated student assignment plan does not comply with the EEOA imposes "no increased burden" upon Amite

---

5. In *United States v. Georgia*, 466 F.2d 197, 200 (5 Cir. 1972), a panel of this court reversed a district court's holding that a school district's sex-segregated school plan was constitutionally permissible because the court had not held a hearing to determine whether the plan was racially motivated. The panel remanded the case for a hearing in order to determine whether "the plan was implemented for educational rather than racially discriminatory purposes." In *Moore v. Tangipahoa Parish School Board*, 421 F.2d 1407 (5 Cir. 1969), although a panel of this court granted a motion, in which all parties had joined, to dismiss the appeal from a district court's approval of a school board's plan providing for several sex-segregated schools or grades within two wards of the parish, 304 F.Supp. 244, 249 (E.D.La.1969), we noted that our action was not to be taken as "passing on whether the plan implemented by the District Court does in fact meet the requirements of *Alexander v. Holmes County Board of Education*, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19, and *Singleton v. Jackson Municipal Separate School District* (and consolidated cases en banc), 419 F.2d 1211 [5 Cir. December 1, 1969]." The en banc court in *Singleton v. Jackson Municipal Separate School District, supra,* expressly pretermitted whether the sex-segregated plan submitted by the School Board of Concordia Parish, Louisiana was proper as it did not result in a unitary system. 419 F.2d at 1220.

Also in *Smith v. St. Tammany Parish School Board*, 302 F.Supp. 106, 108, D.C., *modified on other grounds*, 316 F.Supp. 1174 (D.C.1969), the United States District Court for the Eastern District of Louisiana, relying on *Moore v. Tangipahoa Parish, supra*, approved a sex-segre-

County. *See Bradley v. School Board*, 416 U.S. at 720–721, 94 S.Ct. at 2020–21.

█ In adopting the EEOA, Congress declared that it is the policy of the United States that

(1) all children enrolled in public schools are entitled to equal educational opportunity without regard to race, color, sex, or national origin; and (2) the neighborhood is the appropriate basis for determining public schools assignments.

. . . In order to carry out this policy, it is the purpose of [the EEOA] to specify appropriate remedies for the orderly removal of the vestiges of the dual school system.

20 U.S.C. § 1701. This Congressional declaration of policy was based upon findings regarding the effects of maintaining a dual system and the implementation of desegregation plans to achieve a unitary school system, including a finding that "the maintenance of dual school systems in which students are assigned to schools solely on the basis of race, color, sex, or national origin denies to those students the equal protection of the laws guaranteed by the fourteenth amendment . . . ." *Id.* § 1702(a)(1). This declaration expressly goes beyond the rights guaranteed to school children under the Fourteenth Amendment prior to the EEOA's adoption and incorporates a judgment that a sex-segregated school district is a dual rather than a unitary school system and results in a similar if not equivalent injury to school children as would occur if a racially segregated school system were imposed. *See generally* Comment, *The Constitutionality of Sex Separation in School Desegregation Plans*, 37 U.Chi.L.Rev. 296, 315–16 (1970).

Amite County argues that the purpose of the EEOA is to return to the concept of neighborhood schools without retreating in protection of the constitutional rights of school children. It further urges that Congress did not intend to expand rights granted under the equal protection clause of the Fourteenth Amendment but merely re-

gated student assignment plan which had been offered "only as a transitory measure designed ·

stated the law with respect to school desegregation as it presently exists and that the EEOA adds nothing to the Fourteenth Amendment except the establishment of the priority to be accorded remedies selected to enforce those rights. *See United States v. Texas Education Agency*, 532 F.2d 380, 394 n. 18 (5th Cir.), *vacated and remanded on other grounds*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976) ("[Under the EEOA], federal courts may adopt desegregation remedies requiring busing only as a last resort. *See* 20 U.S.C. §§ 1713, 1755.")

Amite County contends that the test we set forth in *United States v. Georgia*, 466 F.2d 197, 200 (5 Cir. 1972), retains its vitality. As support for its premise that our task is to determine whether its sex-segregated student assignment plan was implemented for educational rather than racially discriminatory purposes, we are pointed to 20 U.S.C. § 1703(a) which provides:

No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—

(a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools . . . .

Amite County asserts that sex separation among or within schools is not a denial of students' federal statutory rights. The only mention of sex separation in all of section 1703 is in subsection (c) which proscribes:

the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color, sex, or national origin among the schools of such agency that would result if such student were assigned to the school closest to his or her place of residence within the school district of such agency providing the appro-

to ease the conversion to a unitary system", for the single school term of 1969–1970.

priate grade level and type of education for such student . . . .

Amite County sees subsection (c) as an effort to reestablish neighborhood schools which is remedial rather than proscriptive. Thus it contends that its sex-segregated student assignment plan which allows students to attend the school designated for their sex which is closer to their residence does not violate subsection (c) or the intent of Congress to return to the concept of neighborhood schools since all students may attend the sex-segregated school closest to their residence.

We do not find Amite County's arguments persuasive. Initially we note that when Congress adopted the EEOA, it did more than provide a declaration of policy and make explicit findings regarding equal educational opportunities for school children as a preamble to explicitly providing a system of priority of remedies in the implementation of desegregation plans. *See* 20 U.S.C. §§ 1712–18, 1751–58. Congress went further, and in part II of the Act, entitled "Unlawful Practices," it expressly proscribed certain state acts and practices. *See* 20 U.S.C. §§ 1703–05. As we noted in *Morales v. Shannon,* 516 F.2d 411, 415 (5th Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 566, 46 L.Ed.2d 408 (1976), these sections go beyond the acts and practices proscribed prior to the EEOA's passage and guarantee additional rights to public school children. As our following discussion reveals, a sex-segregated student assignment plan, such as the one Amite County is currently using, falls among the practices barred.

■ Although section 1703(a) may appear to be ambiguous, when read in light of the EEOA's definition of "segregation," 20 U.S.C. § 1720(c), its meaning becomes clear. By Congressional definition "segregation" means "the operation of a school system in which students are wholly or substantially separated among the schools of an educational agency on the basis of race, color, sex, or national origin or within a school on the basis of race, color, or national origin." *Id.* Thus among the schools within a system, Congress intended to prohibit the assignment of students on the basis of race, color, sex, or national origin. Within a single school, however, Congress prohibited separation of students only on the basis of race, color, or national origin, thus permitting sex-segregation to continue in instances similar to those in the past such as physical education and home economics classes.

■ Additionally, we do not accept Amite County's argument relating to the meaning to be assigned to section 1703(c). The significance to be given to that section becomes clear when one reads 20 U.S.C. § 1705 which further clarifies and reenforces the meaning of section 1703(c). Section 1705 provides that the assignment of students to their neighborhood school which provides the "appropriate grade level and type of education" is permissible under the Act "unless such assignment is for the purpose of segregating students on the basis of . . . sex . . . ."[6] Thus section 1705 expressly prohibits Amite County's present sex-segregated student assignment plan, a practice which might otherwise appear permissible if section 1703(c) were read alone.[7]

■ Finally, Amite County argues that it should be permitted to continue its present modified plan because it fears that whites will leave the public school system if sex-desegregation is implemented. This is an impermissible basis for refusing to comply with the statutorily mandated scheme. *E. g., United States v. Scotland Neck City Board of Education,* 407 U.S. 484, 491, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972).

**6.** 20 U.S.C. § 1705 provides in full:

Subject to the other provisions of this subchapter, the assignment by an educational agency of a student to the school nearest his place of residence which provides the appropriate grade level and type of education for such student is not a denial of equal educational opportunity or of equal protection of the laws unless such assignment is for the purpose of segregating students on the basis of race, color, sex, or national origin, or the school to which such student is assigned was located on its site for the purpose of segregating students on such basis.

**7.** In contending to the contrary, Amite County relies on *Vorchheimer v. School District,* 532 F.2d 880, 885 (3d Cir. 1976), *aff'd by an equally divided court,* 430 U.S. 703, 97 S.Ct. 1671, 51

We need not review the district court's finding that Amite County officials implemented the sex-segregated assignment plan for sound educational purposes since regardless of motive, purpose, or effect, Congress has prohibited its further use. We remand the case so that the district court and the parties may fashion an appropriate remedy as required by the EEOA, 20 U.S.C. §§ 1712–18, 1751–58, in light of the best educational interests of the children and parents involved.

REVERSED and REMANDED.

L.Ed.2d 750 (1977). However, the Amite County schools do not present the type of situation dealt with by the Third Circuit. Their decision analyzed Philadelphia, Pennsylvania, a large city school system which maintained two *voluntary*, sexually segregated high schools (one for boys and one of equal quality for girls) in an otherwise coeducational system. The two schools had been in existence in the system for over 100 years. They afforded 7% of the system's high school students who applied for such schools an opportunity for advanced instruction in an all-boy or all-girl school environment. The Third Circuit's majority opinion noted:

We do not here face an attempt by a school board to *assign* "a student to a school, other than the one closest to his or her place of residence within the district in which he or she resides . . . ," 20 U.S.C. § 1703(c). (Emphasis added.)

In Amite County, on the other hand, all students in the system are *assigned* to sexually segregated schools at every level, from entry through graduation. Such a system can neither pass muster under *Vorchheimer*'s analysis or our own.

