MASON *v.* BOARD OF EDUCATION OF THE SCHOOL
DISTRICT OF THE CITY OF FLINT.

1. SCHOOLS AND SCHOOL DISTRICTS—ATTENDANCE AREAS.

  The board of education of a school district has the authority to establish attendance areas within the district (CLS 1961, § 340.589).

2. SAME—ATTENDANCE AREAS—RACIAL IMBALANCE—CONSTITUTIONAL LAW.

  The Constitution does not require that children of different races be mixed to correct racial imbalance for educational purposes

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Schools §§ 13, 17–19, 42; 15 Am Jur 2d, Civil Rights § 42.

[2–7] 15 Am Jur 2d, Civil Rights §§ 38–43.

  De Facto segregation of races in public schools. 11 ALR3d 780.

[8] 5 Am Jur 2d, Appeal and Error § 1009.

where attendance areas have been set without considering race and a changing neighborhood causes segregation, nor does it preclude such mixing (US Const, Am 14; Mich Const 1963, art 1, § 2; CLS 1961, § 340.589).

3. SAME—ATTENDANCE AREAS—RACIAL CRITERION—CONSTITUTIONAL LAW.

That special characteristics and circumstances are occasioned by color or associated with a particular race makes it no more unconstitutional to take them into account in setting attendance areas for a school district than it would be to give special attention to physiological, psychological, or sociological variances from the norm occasioned by other factors (CLS 1961, § 340.589).

4. SAME—ATTENDANCE AREAS—DISCRIMINATION—PUBLIC POLICY.

The policy of this State, as long embodied in constitution and statute, has been to prohibit discrimination based on religion, creed, race, color, or national origin in determining the right of a child to attend any school (Const 1963, art 8, § 2; CLS 1961, § 340.355).

5. SAME—ATTENDANCE AREAS.

Attendance areas may not be arbitrarily set to *exclude* any given segment of the school population (CLS 1961, § 340.589).

6. SAME—ATTENDANCE AREAS—CONSTITUTIONAL LAW.

A child has no constitutionally protected right to attend a public school outside the attendance area in which he resides, if the attendance areas are not arbitrarily set (CLS 1961, § 340.589).

7. SAME—ATTENDANCE AREAS—RACIAL BALANCE.

Racial balance is a permissible criterion, to be considered with others, in establishing boundary lines of high school attendance areas, and the use of such criterion does not deprive pupils of a constitutional right to equal protection of the law (US Const, Am 14; Const 1963, art 1, § 2; CLS 1961, § 340.589).

8. COSTS—PUBLIC QUESTION—HIGH SCHOOL ATTENDANCE AREAS.

No costs are allowed in appeal by board of education from judgment prohibiting it from using racial balance as one of the criteria in establishing high school attendance areas, a public question being involved.

Appeal from Genesee; Baker (John W.), J. Submitted Division 2 October 6, 1966, at Lansing. (Docket No. 165.)   Decided March 28, 1967.

Complaint by Truel Mason, guardian *ad litem* for Tom Zedo and others, against the Board of Education of the School District of the City of Flint for declaratory judgment and injunctive relief.   Judgment for plaintiff.   Defendant appeals.   Reversed.

*Robert A. Grimes,* for plaintiff.

*Bellairs & Dean,* for defendant.

N. J. Kaufman, J.   The school district of the city of Flint is a second-class school district governed by the provisions of CLS 1961, §§ 340.141–340.166, as amended (Stat Ann 1959 Rev and Stat Ann 1965 Cum Supp §§ 15.3141–15.3166), in the school code of 1955.   Under those provisions, the school district is placed under the jurisdiction of the defendant board of education of the school district of the city of Flint.

Prior to 1959, when 2 high schools served the educational needs of the community, the policy of permitting students to attend the school of their choice was in effect.   With the opening of the third high school, attendance areas for the 3 high schools were established.[1]

In anticipation of the opening of a fourth high school in the fall of 1964, public hearings were held and new boundary lines establishing the present attendance areas were adopted.   The criteria used by the Flint board of education and its administrative

---

[1] The board of education is authorized to establish attendance areas under the authority of CLS 1961, § 340.589 (Stat Ann 1959 Rev § 15.3589).

staff in establishing high school boundary lines in the district were as follows:

1. Building capacity and plant utilization.
2. Stability of boundary lines.
3. Transportation lines.
4. Neighborhoods representative of school population (racial balance).

Plaintiff, as guardian *ad litem* for approximately 100 students residing in the Flint school district, sought a declaratory judgment directing the defendant board of education to allow the students represented by the plaintiff to attend Central high school, the school they formerly attended, or in the alternative any school of their choice.

Plaintiff charged in his amended complaint that defendant acted arbitrarily and capriciously in fixing the disputed boundary lines. Plaintiff further charged that the board of education attempted to achieve an equal percentage of races in each schoolhouse, thus denying students represented by the plaintiff equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution[2] and, as cited in plaintiff's brief, article 1, § 17 of the Michigan Constitution (1963).[3]

Plaintiff conceded in oral argument that the board of education did not act arbitrarily and capriciously in setting said boundary lines. It was further conceded that the board of education has the authority

---

[2] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

to establish attendance areas. The case was then presented to the trial court solely on the constitutional issue, *i.e.*, may the board of education consider racial balance as one of the criteria in establishing boundary lines of high school areas?

⸱⸱The lower court entered a judgment permanently restraining the defendant board of education from considering racial balance as one of the criteria in setting boundary lines.

Defendant board of education appeals the judgment of the lower court.

Where, under either the Fourteenth Amendment of the Federal Constitution, or article 1, § 17 of the Michigan Constitution (1963), as cited by plaintiff, or article 1, § 2 of the Michigan Constitution (1963),[4] is anyone deprived of equal protection of the laws by a board of education's considering racial balance as one of its criteria in setting attendance areas? This Court cannot find any such deprivation.

In an opinion written by Chief Justice Warren, which was unanimously concurred in by the Supreme Court of the United States, it was held that the plaintiffs, by reason of the segregation complained of, were deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment. *Brown* v. *Board of Education of Topeka* (1953), 347 US 483 (74 S Ct 686, 98 L ed 873, 38 ALR2d 1180), supplemental opinion, 349 US 294 (75 S Ct 753, 99 L ed 1083). The "separate but equal" doctrine announced in *Plessy* v. *Ferguson* (1896), 163 US 537 (16 S Ct 1138, 41 L ed 256) involving equality in transportation facilities, under which equality of treatment is accorded by providing Negroes and Caucasians substantially equal though separate

---

[4] "No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation."

facilities, was held to have no place in the field of public education.

In the *Brown Case,* the Supreme Court of the United States practically told every school board in the United States that it may consider racial balance when setting boundaries. In the supplemental opinion, 349 US 294 (75 S Ct 753, 99 L ed 1083), the Supreme Court of the United States stated:

"To that end, the courts *may* consider problems related to *administration,* arising from the physical condition of the school plant, *the school transportation system,* personnel, *revision of school districts* and *attendance areas* into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems." (Emphasis supplied.)

Where attendance boundaries[5] have been set without considering race, and a changing neighborhood causes segregation, there is no constitutional mandate to mix the races in order to remedy racial imbalance for educational purposes. *Bell* v. *School City of Gary, Indiana* (CA 7, 1963), 324 F2d 209, certiorari denied, 1964, 377 US 924 (84 S Ct 1223, 12 L ed 2d 216). This case cannot be read as prohibiting considerations of racial balance since, conversely, there is no mandate *precluding* such mixing. As stated in *Springfield School Committee* v. *Barksdale* (CA 1, 1965), 348 F2d 261, 266:

"It would seem no more unconstitutional to take into account plaintiffs' special characteristics and

---

[5] CLS 1961, § 340.589 uses the term *attendance areas.* In any metropolitan city having more than one high school, common sense dictates that the area for a particular school must be set by boundaries.

circumstances that have been found to be occasioned by their color than it would be to give special attention to physiological, psychological or sociological variances from the norm occasioned by other factors. That these differences happen to be associated with a particular race is no reason for ignoring them."

The intent of the Flint board of education was to attempt in good faith to provide equal educational opportunities by the correction of racial imbalance. There was no effort made to conceal this consideration from the public. The board admitted in open hearings that racial balance was *one* of the criteria used in fixing the boundary lines.

Since 1867,[6] it has been the policy of this State to prohibit unjust discrimination in determining the right of a child to attend any school. Michigan was one of the first to recognize this concept and has long been a leader.

The Michigan Constitution (1963), article 8, § 2 states:

"Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

The committee comment to Michigan Constitution (1963), art 8, § 2 in the address to the people (2 Constitutional Convention Record [1961], p 3395), contains the following language:

"The antidiscrimination clause is placed in this section as a declaration which leaves no doubt as to where Michigan stands on this question."

---

[6] PA 1867, No 34, § 28, provided in part that: "All residents of any district shall have an equal right to attend any school therein: Provided, that this shall not prevent the grading of schools according to the intellectual progress of the pupils, to be taught in separate places when deemed expedient." See *People, ex rel. Workman,* v. *Board of Education of Detroit* (1869), 18 Mich 399. A substantially similar provision is embodied in the present school code, PA 1955, No 269 (CLS 1961, § 340.355 [Stat Ann 1959 Rev § 15.3355]).

Attendance areas may not be arbitrarily fixed to *exclude* any given segment of the school population. If the attendance areas are not arbitrarily set, the child has no constitutionally guaranteed right to attend a public school outside of the attendance area in which he resides. *Henry* v. *Godsell* (ED Mich, 1958), 165 F Supp 87.

. As stated in *Olson* v. *Board of Education of Union Free School District No. 12, Malverne, New York* (ED NY, 1966), 250 F Supp 1000, 1010:

"The plaintiff is not required to attend a school which, under similar circumstances, other students, regardless of race, are not also required to attend. The motivation is not discrimination but assistance to minority groups in providing equal educational opportunities."

The decision of the trial court is reversed. No costs, a public question being involved.

QUINN, P. J., and McGREGOR, J., concurred.