**Shawn GARRETT, individually and as next friend to Crystal Garrett, a minor, and Nancy Doe, individually and as next friend to Jane Doe, Judy Doe, and Jessica Doe, minors, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF the SCHOOL DISTRICT OF the CITY OF DETROIT, Defendant.**

**No. 91–CV–73821–DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 15, 1991.

Richard Soble, Goodman, Eden, Millender & Bedrosian, Paul Denenfeld, Beverly

Clark, ACLU Fund of Michigan, Detroit, Mich., Martha F. Davis, NOW Legal Defense and Educ. Fund, New York City, for plaintiffs.

Eric L. Clay, Otis M. Smith, Lewis, White & Clay, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

WOODS, District Judge.

Plaintiffs filed this suit on Monday, August 5, 1991, alleging the defendant Board of Education of the School District of the City of Detroit ("Board") violated the Fourteenth Amendment to the United States Constitution, Article 1, § 2 of the Michigan Constitution, Title IX, the Equal Educational Opportunities Act, Michigan's Elliott–Larsen Act and Michigan's School Code through the establishment of male-only academies. Plaintiffs are girls enrolled in Detroit public schools and their parents.[1] Plaintiff Nancy Doe is a Detroit resident with daughters aged 11, 6, and 5, all of whom will attend Detroit public schools this fall.[2] Defendant Board of Education for the School District of the City of Detroit controls, manages and administers the public schools for the city pursuant to Mich.Comp.Laws Ann. § 380.401 *et seq.* (West 1988).

On August 5, 1991, plaintiffs moved this Court to issue a temporary restraining order to enjoin the Board from taking any further steps to implement the male academies. This motion was denied; the Court set an expedited hearing date for the resolution of plaintiffs' motion for preliminary injunction. The Court heard oral argument August 15, 1991, and issued its opinion from the bench. This written opinion supplements the bench order.

---

1. Shawn Garrett is a Detroit resident with a four year old daughter who will be attending preschool in the Fall of 1991. Shawn Garrett, both individually and as next friend to Crystal Garrett, voluntarily dismissed her action before oral argument, stating she had been subjected to harassing phone calls and comments from members of the community.

2. Nancy Doe and her daughters proceed pseudonymously. The defendant subpoenaed the Does to appear; however, the Court quashed the subpoenas prior to oral argument.

## I

Three male academies ("Academies") are scheduled to open on August 26, 1991. The Academies will serve approximately 250 boys in preschool through fifth grade. Grades six through eight will be phased in over the next few years. The Academies offer special programs including a class entitled "Rites of Passage", an Afrocentric (Pluralistic) curriculum, futuristic lessons in preparation for 21st century careers, an emphasis on male responsibility, mentors, Saturday classes, individualized counseling, extended classroom hours, and student uniforms.

Plaintiffs contend that these special offerings (1) do not require a uniquely male atmosphere to succeed; and (2) address issues that face all children and adolescents, including females. Plaintiffs further charge that despite the stated goal of the Academies to address the high unemployment rates, school dropout levels and homicide among urban males, the Academies do not target "at-risk" males; rather, they serve a mix of boys from all achievement levels.[3]

## II

The Sixth Circuit requires the Court to consider four factors in deciding a motion for injunctive relief:

(1) the likelihood of plaintiffs' success on the merits;

(2) whether the injunction will save the plaintiffs from irreparable injury;

(3) whether the harm to plaintiffs if relief is not granted outweighs the harm to others if relief is granted; and

(4) whether the public interest would best be served by the issuing of the injunction.

*In Re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985). The Court will address each in turn.

### A. Likelihood of Success

Plaintiffs allege in their complaint that the defendant has deliberately chosen to disregard the rights of girls in the public school system, despite the specific advice of state governmental authorities and the federal policy requiring equal educational opportunities without regard to sex. Each of the laws allegedly violated by defendant Board is discussed below.

#### 1. *Federal and State Constitutions*

■ Gender-based classifications implicate the protection afforded by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as well as the corresponding provision of the Michigan Constitution, Article 1, Section 2. The Equal Protection Clause of the Michigan Constitution, Article 1, § 2, provides protection against discrimination equal to or greater than the protection provided by the federal Constitution. *Doe v. Dep't of Social Services,* 187 Mich.App. 493, 512–19, 468 N.W.2d 862 (1991). Because plaintiffs offer no additional arguments based on the greater protection offered by the Michigan Constitution, the analysis is combined for the sake of brevity.

In *Mississippi v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982), the Supreme Court held that exclusion of an individual from a publicly-funded school because of his or her sex violates the Equal Protection Clause of the Fourteenth Amendment, unless the defendant can show the sex-based "classification serves 'important governmental objectives and that the discriminatory means employed'" are "substantially related to the achievement of those objectives." *Hogan,* 458 U.S. at 724, 102 S.Ct. at 3336 (quoting *Wengler v. Druggist Mutual Ins. Co.,* 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980)).[4]

---

**3.** Selection criteria included seven variables from which an at-risk point value was derived. Applicants were then separated into three categories: high need, mid-level and low need. One-third of the students admitted were randomly selected from each need category.

**4.** According to the plaintiffs, Detroit offers no schools for girls even comparable to the Male Academies; therefore, the Court is not presented with the question of whether the Board can provide separate but equal public school institu-

Plaintiffs maintain the Board cannot meet this standard because the Board's policy of excluding girls inappropriately relies on gender as a proxy for "at-risk" students. The Academies were developed in response to the crisis facing African–American males manifested by high homicide, unemployment, and drop-out rates. While these statistics underscore a compelling need, they fall short of demonstrating that excluding girls is substantially related to the achievement of the Board's objectives. The Board has proffered no evidence that the presence of girls in the classroom bears a substantial relationship to the difficulties facing urban males.

Accordingly, plaintiffs conclude that the male academies improperly use gender as a "proxy for other, more germane bases of classification," *Craig v. Boren*, 429 U.S. 190, 198, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976), in this instance, for "at risk" students.[5] Specifically, the gender specific data presented in defense of the Academies ignores the fact that all children in the Detroit public schools face significant obstacles to success. In fact, in its resolution establishing the Academies, the Board acknowledged an "equally urgent and unique crisis facing ... female students." Urban girls drop out of school, suffer loss of self esteem and become involved in criminal activity. Ignoring the plight of urban females institutionalizes inequality and perpetuates the myth that females are doing well in the current system. Accordingly, plaintiffs contend there is no adequate justification for the Academies' exclusive focus on boys. *See Craig v. Boren*, 429 U.S. 190, 204, 97 S.Ct. 451, 460, 50 L.Ed.2d 397 (1976).

Plaintiffs also assert that the special curriculum proposed for the Academies suggests a false dichotomy between the roles and responsibilities of boys and girls. For example, the Rites of Passage curriculum teaches that "men need a vision and a plan for living," "men master their emotions," and "men acquire skills and knowledge to overcome life's obstacles." These issues confront all adolescents and are not rites peculiarly male. Therefore, they are insufficient to justify gender-based classification.

Defendant responds that the validity of the objective of the male academies distinguishes the instant matter from the program found unconstitutional in *Hogan*, wherein the Supreme Court addressed the single sex admissions policy of the Mississippi University for Women School of Nursing. In *Hogan*, the State attempted to justify the policy by proving it compensated for historical discrimination against women. The Court rejected this argument. In contrast, the defendant here argues it has confirmed the present delivery of education has resulted in substantially lower achievement levels for males than for females and that the Academies are the solution to this problem. The primary rationale for the Academies is simply that co-educational programs aimed at improving male performance have failed.

The Court is wary of accepting such a rationale. Although co-educational programs have failed, there is no showing that it is the co-educational factor that results in failure. Even more dangerous is the prospect that should the male academies proceed and succeed, success would be equated with the absence of girls rather than any of the educational factors that more probably caused the outcome.

Defendant argues that just because females also face academic performance problems does not weaken the importance of their objective in opening the male academies. Further, the Board states it has recognized the difficulties faced by urban females and developed alternative programs housed in single sex schools that specifically address the needs of females, such as pregnancy-related programs. The Court does not find fault with this argu-

tions for boys and girls. *See Hogan*, 458 U.S. at 720, n. 1, 102 S.Ct. at 3334, n. 1.

5. Plaintiffs assert that the Academies fail to target even those male students who are most at risk because admission requirements specify a mix of students with a wide range of achievement levels be included.

ment; the objective of the male academies is important; but, the degree of importance does not eliminate the defendant's burden of showing that the second prong of the *Hogan* test is met.

Defendant argues in the alternative that the second prong, "substantially related" is satisfied for three reasons. First, the establishment of male academies is critical to expeditiously determine what curriculum and training programs will work to keep urban males out of the City's morgues and prisons. Second, the Board has already reviewed smaller scale experimental programs at two schools that specifically addressed the special needs of urban males and found them successful in improving the overall academic and behavioral aspects of the urban males' life style.[6] Third, the Board knows that current co-ed programs do not work. Consequently, the Board finds that research supports the establishment of an experimental school with a specialized curriculum to address the special needs of urban males.

None of these findings meet the defendant's burden of showing how the exclusion of females from the Academies is necessary to combat unemployment, dropout and homicide rates among urban males. There is no evidence that the educational system is failing urban males because females attend schools with males. In fact, the educational system is also failing females. Thus, the Court concludes the application of the second prong of the *Hogan* test to the facts at hand, makes it likely that the plaintiffs will succeed on a constitutional argument.[7]

### 2. *Title IX*

Plaintiffs also argue that the Academies violate Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, (1990), and its implementing regulations, 24 C.F.R. 106, *et seq.*, (1990). Title IX prohibits those educational programs receiving federal funds from treating students unequally on the basis of sex. The regulations implementing Title IX provide that students may not be given "different aid, benefits, or services" because of their sex. 34 C.F.R. § 106.31(b)(2). In addition, the regulations prohibit recipients of federal financial assistance from providing any course or otherwise carrying out any of its educational programs on the basis of sex, or from requiring or refusing participation therein by any students on such basis. 34 C.F.R. § 106.36. The regulations also list the exceptions; that is, the types of classes which may be single sex. See 24 C.F.R. § 106.34(c), (e), and (f). Because the Academies do not fall within the listed exceptions, plaintiffs conclude that they violate Title IX.

Defendant argues the plaintiffs cannot succeed on this theory because Title IX (1) excludes from coverage, admission plans in kindergarten through grade twelve; and (2) its legislative history recognized the need for continued experimentation with unique methods of education, such as the Academies.

■ Regarding admission plans, 20 U.S.C. § 1681(a)(1) provides as follows:

Classes of Educational Institutions Subject to Prohibition

In regard to *admissions* to educational institutions, this section shall apply *only* to institutions of vocational education, professional education, and graduate higher education, and to public institu-

---

6. Ray Johnson, Assistant Principal at Cooper Elementary School, created a voluntary extracurricular mentorship program, "Man-to-Man." The program is three years old and affords male students weekly interaction with professional male mentors across the city. Johnson asserts that the program has been successful and has led to some improvement in the academic status of male participants. Woodward School enacted a similar program that met with similar success.

7. Plaintiffs also argue that the voluntary assignment of students to the Academies does not save the Academies from unconstitutionality. Defendant does not dispute this argument; consequently, the Court need not discuss it. In addition, plaintiffs note that experimental programs are not exempt from constitutional requirements. Again, defendant does not respond to this argument. Finally, plaintiffs contend that the male academies do not qualify as affirmative action programs. Defendant does not dispute this statement.

tions of undergraduate higher education; (emphasis added).

This section would allow for the selection of prospective students on the basis of sex. Therefore, defendant concludes, all things being equal, a school could be created that would admit students of only one sex. Defendant's argument is flawed. The Court views this exemption for admissions as applicable primarily to historically pre-existing single sex schools;[8] it is not viewed as authorization to establish new single sex schools. No case has ever upheld the existence of a sex-segregated public school that has the effect of favoring one sex over another. The interplay of the Constitution and other statutes, as well as the legislative history, diminishes the persuasiveness of this argument.

The Court examines defendant's second argument, that congressional intent allows for experimentation with single sex educational options noting exceptions for military academies, social fraternities, and youth service organizations. An additional exemption is made for any public institution of undergraduate higher education that "traditionally and continually from its establishment has had a policy of admitting only students of one sex." Accordingly, the statute recognizes the value of single sex public schools and did not intend to preclude experimental programs designed as such.

Plaintiffs' claims, however, do not rest solely on the denial of admission; rather, they rely on Title IX to protect their right to the same benefits and services. Undoubtedly, plaintiffs desire access to the programs offered at the Academies. Defendant, by way of the affidavit of Arthur M. Carter, Interim Deputy Superintendent of the Board, states that the educational programs are no different from the individualized instruction and benefits offered in other schools throughout the system. (Aff. at p. 14.) It is unclear, however, whether all of the course offerings available at the Academies can be had at any one school and from the evidence before the Court it appears this is not the case.

Additionally, defendant argues that the Secretary of Education has promulgated regulations under Title IX that allow the Board of Education to establish the male academies. 24 C.F.R. § 106.3 provides in relevant part:

[I]f ... a recipient has discriminated against persons on the basis of sex ... recipient shall take such remedial action as the Assistant Secretary deems necessary to overcome the effects of such discrimination.

(b) In the absence of finding of discrimination on the basis of sex ... recipient may take affirmative action to overcome the effects of conditions which resulted in limited participation therein by persons of a particular sex.

The Board has reviewed the evidence and determined that conditions have resulted in limited participation of urban males in educational programs and activities. Therefore, even in the absence of a specific finding of discrimination by the Assistant Secretary of Education, the Board maintains that the regulations do not prohibit the action it has taken.

Despite the Board's stance, the Office of Civil Rights of the Department of Education, ("OCR"), the federal governmental authority charged with administrative enforcement of Title IX, has opined that all male public elementary and secondary school programs violate Title IX.[9] Also,

---

**8.** The limitation on Title IX's applicability to admissions policies of public elementary and secondary schools was added to the Senate version of the bill immediately prior to its passage. A House Amendment to the Senate version explicitly covered the admissions policies of such schools, requiring that they convert to coed status within seven years of the bill's passage. Sen.Rep. 92–604. The conference committee considering these provisions adopted the Senate version which according to Senator Bayh was intended to allow continued single sex admissions by *existing* institutions.

**9.** In August, 1988, the Superintendent of the Dade County Public Schools sought an OCR ruling concerning experimental all male kindergarten and first grade classes. OCR stated the rationale for stated exceptions to Title IX are privacy or safety concerns. (Complaint, Exhibit H.) Similarly in April, 1990. The Wisconsin Department of Public Instruction sought a ruling from OCR regarding conditions under

the Michigan State Department of Education notified defendant that the male academies violated Title IX. (Complaint, Exhibit H.) At this stage in the litigation, this Court defers to the opinion of the OCR. Therefore, plaintiffs have met their burden of showing the likelihood of success on this cause of action.

### 3. Equal Educational Opportunities Act

The Equal Educational Opportunities Act, ("EEOA"), 20 U.S.C. § 1701, et seq., (1990), prohibits a student assignment to a school other than a neighborhood school if reassignment "results in a greater degree of segregation of students on the basis of ... sex ... among the schools of such agency than would result if such students were assigned to the school closest to his or her place of residence within the school district of such agency providing the appropriate grade level and type of education for such student." 20 U.S.C. § 1703 (1990). This act was passed to eliminate the vestiges of dual school assignments based on racial discrimination and no mention of single sex schools ever occurred in the Senate and House debates.

The only reported decision considering the issue of sex segregation under the EEOA, *United States v. Hinds County School Bd.*, 560 F.2d 619 (5th Cir.1977), held that the sex-segregated schools violated the EEOA. The Fifth Circuit Court of Appeals concluded that the EEOA expressly "prohibits ... sex-segregated student assignment," even if there is some educational purpose in implementing the system. *Id.* at 625. Plaintiffs cite this case in support of their position that the Academies violate the EEOA.

Defendant distinguishes this case factually. In *Hinds*, the school district was comprised of four schools, all of which segregated children by sex. Furthermore, the School District there argued that the assignments should be permanent. In the

which an all black, all male school could be created. Again OCR responded that segregation of students on such a basis violated Title IX. (Complaint, Exhibit H.)

case at bar, the Academies are experimental in nature; the charter authorizes a three-year existence. Also, there are 251 schools in the Detroit district; the Academies number 3. Finally, the defendant argues that a female academy will be established "soon."

Defendant also argues that the EEOA section cited by plaintiffs is inapplicable as it deals with "the assignment" by an educational agency whereas students are not assigned to any school by the Board. Rather, the students at the Academies are volunteers.

Plaintiff responds to these arguments as follows: the EEOA does not make exceptions for "separate but equal" programs; if Congress wished to create an exception to the provision of the EEOA for "voluntary freedom of choice" plans, it could have done so.[10]

Because the only applicable case is so easily distinguished, the Court finds the plaintiffs have not demonstrated probability of success sufficient to meet their burden as to this cause of action.

### 4. Michigan's Elliott–Larsen Act

The Elliott–Larsen Act, Mich.Comp.Laws Ann. §§ 37.2102(a), 37.2302(a), 37.2402, (West 1985), provides that "full and equal utilization" of and benefit from educational institutions and facilities and public accommodations shall not be denied on the basis of an individual's sex. In 1986, the Michigan Supreme Court held that "when evaluating whether a classification by gender amounts to impermissible sex discrimination under Section 302(a) of the Civil Rights Act, Art. 1, § 2 of the Michigan Constitution, or under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the standard to be applied is the same." *Civil Rights Dept. v. Waterford*, 425 Mich. 173, 190, 387 N.W.2d 821 (1986). Therefore, the Court need not

10. Exempting freedom of choice plans would have destroyed the effectiveness of the EEOA by permitting a school board to allow white students to "voluntarily" transfer into race-segregated schools so long as the board did not make such assignments.

extensively address the likelihood of success on this claim; it relies instead on the prior analysis regarding the constitutional claims.

Plaintiffs do argue, however, that the Act prohibits educational institutions from publishing notices—such as the Board flyer concerning the male academies—indicating "a preference, limitation, specification, or discrimination based on ... sex." Mich. Comp.Laws Ann. §§ 37.2402(d), (e), (West 1985).

This district has previously held in *Rogers v. Int'l Ass'n of Lions Clubs*, 636 F.Supp. 1476, 1482 (E.D.Mich.1986), that a preliminary injunction was warranted as the continued exclusion of women from a public club constituted "a gross violation" of the policy underlying the Act and "should not be allowed to continue."

Because the Court has already determined that the plaintiffs will likely succeed on the merits of their constitutional claim it logically concludes success is also likely on the ground that the Academies violate the Elliott–Larsen Civil Rights Act.

5. *Michigan School Code*

Section 380.1146 of the Michigan State School Code of 1976 ("Code") provides in full:

> A separate school or department shall not be kept for a person on account of race, color, or sex. This section shall not be construed to prevent grading of schools according to the intellectual progress of the pupil to be taught in separate places as may be deemed expedient. (Mich.Comp.Laws Ann. § 380.1146 (West 1988).

This provision is a limitation on the power of local school boards to establish schools and attendance areas within the district. *See Hiers v. Brownell*, 376 Mich. 225, 235, 136 N.W.2d 10 (1965). It incorporates a private right of action to enforce its requirements. *See Mason v. Board of Education*, 6 Mich.App. 364, 370 n. 6, 149 N.W.2d 239 (1967) (private suit brought to enforce the Code of 1955, the predecessor statute to MCLA § 380.1146).

The Code of 1976 added sex as a prohibited classification but in all other respects was a recodification of prior law. The prior law prohibited the establishment of a school excluding students based on a suspect classification. Accordingly, plaintiffs assert that the Board's policy of establishing male academies and excluding girls from those Academies violates the Code.

Defendant concedes that the Code prohibits the establishment of a separate school on the basis of sex, but argues it does not prohibit separate alternative educational programs tailored to the needs of students at risk. The Board also maintains that the male academies are not separate schools.[11]

Defendant argues that the Academies are not intended and do not have the effect of existing as separate schools that disadvantage students or deny them equal educational benefits because of sex. Rather, they are designed to obtain information in an experimental setting and the knowledge generated from this experiment will be used to benefit all students, male and female. Defendant asserts that the purpose of the male academies is not to separate or ban female students, thus, it is not the activity the legislature intended to prohibit by enactment of § 380.1146. Mich.Comp. Laws Ann. § 380.1146 (West 1988).

Defendant refers the Court to cases involving affirmative action programs, then admits the Academies are not such a program.[12] According to the defendant, case law makes clear the legal prohibitions against discrimination must be interpreted with reference to the "circumstance and purpose behind their adoption." *Local 526 v. Civil Service Commission*, 110 Mich. App. 546, 555, 313 N.W.2d 143 (1981) (af-

---

**11.** Since the Academies are separately named and housed, the Court finds this argument factually unsupportable.

**12.** The Board could not satisfy the criteria necessary for an affirmative action exception since it has not demonstrated past "gender inequity" exists in favor of girls thus justifying reverse-discrimination. *See City of Richmond v. J.S. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

firmative action program designed to increase representation of women and minorities in the state civil service did not violate Michigan Constitution); *Johnson v. Transportation Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (program designed to overcome the underutilization of women must not be rejected as violative of Title VII because to do so would bring about an end completely at variance with the purpose of the statute.) Defendant implies that the Court should analyze the Academies in this context. The Court declines because defendant's inference is rebutted by its own admission.

Defendant also argues the Code, read in its entirety, must be construed to allow innovative alternative educational programs. The Code allows local school boards to address the specific problems incurred by various groups of students, encourages curriculum regarding minority cultures, Mich.Comp.Laws Ann. § 380.-1174, and provides for special education programs for educationally-handicapped students. Mich.Comp.Laws Ann. § 380.-1701. There are also provisions for gifted children, remedial assistance programs and programs for "pregnant persons" and/or "school-age expectant parents ..." Mich. Comp.Laws Ann. § 380.1301. The practical effect is that the predominant sex of the students at the alternative education institutions for pregnant students are female; however, such an effect does not render these institutions illegal as a violation of the Code. Boys are, in fact, included under the expectant parents provision. The Board also refers the Court to the language of Mich.Comp.Laws Ann. § 380.-1146:

> This section shall not be construed to prevent grading of schools according to the intellectual progress of the pupil to be taught in separate places as may be deemed expedient.

Mich.Comp.Laws Ann. § 380.1146 (West 1988). The recitation of exceptions undermines the Board's position. The Academies do not qualify under any of those provisions cited. The Court does not define the Academies as a "program" eligible for exemption. Nor do the Academies merit exemption based on the intellectual grading provision. The admission procedure demonstrates this was not the purpose for which they were established.

The Board notes the Academies do not specifically prohibit attendance by females.[13] This argument cannot save the Board. The name, "Male Academies," in and of itself, as well as the descriptive literature, clearly excludes females from real participation in the program. Although the Board states the Male Academies are not intended or designed to be discriminatory single-sex programs in one breath, in the next it asserts that the program is designed to gather data to determine what type of curriculum and teacher training programs are necessary to alleviate the disparate impact of the current educational system on urban males. The Board cannot have it both ways. The Code explicitly bans sex segregation and explicitly states exceptions to this rule. Plaintiffs are, therefore, likely to succeed with their claim on this cause of action.

The Court, convinced that plaintiffs have met their burden on the first factor necessary for injunctive relief, turns to the second factor.

### B. Irreparable Harm

Plaintiffs argue they will suffer serious, irreparable and immediate harm unless injunctive relief is granted. An injury is irreparable only if it cannot be undone through monetary remedies. *Ohio v. Nuclear Regulatory Comm'n,* 812 F.2d 288, 290 (6th Cir.1987).

Although plaintiffs assert that it is well settled that a violation of constitutional rights constitutes irreparable injury, *per se, Planned Parenthood Ass'n v. Cincinnati,* 822 F.2d 1390, 1400 (6th Cir.1987), this interpretation stretches the holding cited and is not endorsed by this Court. *Planned Parenthood* merely held that a

---

**13.** One female student has been provisionally admitted conditioned upon the resolution of this matter.

potential irreparable injury existed in the form of a violation of a constitutional right.

Such an irreparable injury may also be found here. The fact that plaintiffs may continue in the regular school system does not eliminate or render harmless the denial of their rights to equal opportunity under the Equal Protection Clause. *See Deerfield Medical Center v. Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981). The *Deerfield* court goes on to state that loss of First Amendment rights for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction. *Id.* (citations omitted) This analysis is also applicable to the Fourteenth Amendment rights at stake here.

The Board hints that an acadamy for girls is in the works. This intimation about establishing a girls' academy does not alleviate the injury.[14] Later attempts to equalize opportunities to girls will not compensate for the plaintiffs' lost opportunities to learn, gain self-esteem and be trained for a successful future. Again the balance on this factor weighs in favor of granting a preliminary injunction. Therefore, the Court turns to the third factor.

### C. Harm to Others If the Stay is Granted

If the Court orders the Academies to admit girls, the opening may be delayed beyond the start of the school year. Clearly, students and teachers will be disrupted. The Court suspects greater disruption would result if plaintiffs won this suit and the Academies were then aborted.

Plaintiffs maintain that because defendant has been informed of the illegality of the Academies since February 1990 (See letter of Jo Jacobs), defendant could have avoided this harm. Further, plaintiffs assert the harm is minimal compared to the irreparable violation of plaintiffs' civil rights if the Academies are allowed to proceed under a single sex policy. In this case injunctive relief would fulfill the traditional purpose of preserving the "existing state of things until the rights of the parties can be fairly and fully investigated and determined." *DeLorean* at 1229, quoting *Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur,* 53 F.98, 101 (6th Cir.1892).

Defendant Board argues that an injunction would cause harm to all students because all would benefit from the study of males in a controlled environment. Defendant asserts that female students are a targeted benefactor of the program through "system-wide implementation of those characteristics identified as necessary to the rectification of the past impediments to the educational success of our youth ..."[15] Moreover, male students who are not currently receiving an adequate education within the system will continue to be harmed by inadequacies. Accordingly, this harm outweighs the perceived harm to plaintiffs.

The Board also notes that the Detroit Public Schools have incurred expenses estimated at $454,000 to establish the Academies. (Affidavit of William Aldridge, Divisional Director, Office of Financial Planning and Budget for the Detroit Public School System) Monetary hardship would result if the schools could not open. The Court remains unpersuaded by this argument: economic loss can later be recouped. Further, the schools can open after admission is made available to females. *See Ohio v. Nuclear Regulatory Comm'n,* 812 F.2d at 290.

Finally, the Court must consider whether the Board has any valid interest in opening the male academies in light of the finding that plaintiffs are likely to succeed on the merits of this case. Relying on the reasoning used by the Sixth Circuit in *Ohio v. Nuclear Regulatory Comm'n,* this Court finds no substantial harm would result from preventing the operation of an unconstitutional school.

---

**14.** The loss of one semester cannot be seen as a minimal period of time and the opening of a girls' academy in January is not guaranteed.

**15.** That this argument eviscerates defendant's earlier argument as to the need for single sex education is not lost on the Court.

### D. Public Interest

Plaintiffs argue that the public interest is better served by preventing the opening of an unconstitutional educational facility. Defendant argues the Academies seek a bona fide public good to the detriment of no one. Defendant further contends that the creation of the Academies is substantially related to the important governmental interest of the Detroit Public Schools in obtaining information directed toward meeting the special educational needs of inner-city males. This "pilot setting" affords the public schools the opportunity to evaluate the effectiveness of various curricula and other programs in meeting the educational needs of males.

This Court views the purpose for which the Academies came into being as an important one. It acknowledges the status of urban males as an "endangered species." The purpose, however, is insufficient to override the rights of females to equal opportunities.

Now, therefore, this Court GRANTS plaintiffs' motion for preliminary injunction.

So ordered.