## NATIONAL SOLID WASTES MANAGEMENT ASSOCIATION, Plaintiff,

v.

### Jennifer GRANHOLM, et al, Defendants.

### No. 04–71271.

United States District Court, E.D. Michigan, Southern Division.

Nov. 2, 2004.

Lisa A. Robinson, Robert A. Marsac, Howard & Howard, Detroit, MI, Thomas

R. Mounteer, Paul, Hastings, Washington, DC, for Plaintiff.

Robert P. Reichel, Suzanne D. Sonneborn, Dept of Atty. Gen. Environment, Lansing, MI, Azzam E. Elder, Hilda V. Gurley–Highgate, Detroit, MI, Sanjay Narayan, San Francisco, CA, for Defendants.

Mark A. Richardson, Macomb County Prosecutor's Office, Mt. Clemens, MI, Jeffrey L. Woolstrum, Honigman, Miller, Bingham Farms, MI, for Movants.

## MEMORANDUM

COHN, District Judge.

### I. Introduction

On October 29, 2004, the Court denied plaintiff's motion for a preliminary injunction directed to the implementation of various Michigan laws which became effective March 26, 2004. These laws impose new limitations on the composition of solid waste eligible for disposal in licensed landfills in Michigan and further provide for a procedure to determine whether or not jurisdictions outside of Michigan disposing of their solid waste in Michigan meet the new limitations. Plaintiff, the National Solid Waste Management Association (NSWMA) filed a complaint on April 5, 2004 challenging the constitutionality of the package on the grounds that it discriminates against out-of-state solid waste and especially solid waste originating in Canada in violation of the dormant Commerce Clause and the Foreign Affairs Power. Plaintiff points to the Supreme Court's decision in *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dept. of Natural Res.*, 504 U.S. 353, 359, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992) and similar Supreme Court decisions as well as *NSWMA v. Wayne County*, 303 F.Supp.2d 835 (E.D.Mich.2004) in support of its position.

This Memorandum restates and elaborates on the reasons for denial of the preliminary injunction.

### II. Background

#### A. The Parties

NSWMA "is a non-profit trade association that represents for-profit companies providing solid and medical waste collection, recycling and disposal services" in all fifty states. Verified Compl. at ¶ 2. Members include companies that own and operate Michigan transfer facilities, processing plants and landfills that accept out-of state and Canadian waste. *Id.* at ¶¶ 2, 4.[1]

Defendants include Jennifer M. Granholm, in her capacity as Governor of Michigan, who signed the new legislation on March 26, 2004, Steven E. Chester is the Director of the Michigan Department of Environmental Qualify ("MDEQ"), and is responsible for implementing and enforcing Michigan's solid waste laws, and Mike Cox and Col. Tadarial J. Sturdivant, who are responsible for implementing and enforcing Michigan's solid waste laws including the new legislation.[2]

---

1. As described on its website, the NSWMA is "a trade association representing for-profit companies in North America that provide solid, hazardous and medical waste collection, recycling and disposal services, and companies that provide professional and consulting services to the waste services industry." *See* *www.nswma.org.* Link at htt p://wastec.ispro-ductions.net/ webmodules/webarticles/an-mviewer.asp?a=227 & z=34

2. There are also several amicus parties: Amicus Curiae Sierra Club has engaged in a decade-long effort to secure landfill legislation and is interested in environmental quality. Amicus Curiae Macomb County Michigan has one municipal solid waste landfill and at current disposal rates it will be full by 2012. Amicus Curiae Michigan Waste Industries Association (MWIA) is a Michigan non-profit corporation representing approximately fifty Michigan-based companies dedicated to the collection, processing, recycling and disposal

## B. The Package

Plaintiff is seeking to enjoin defendants from enforcing the recently enacted Michigan legislation entitled the "Solid Waste Control Package" ("the package"). Plaintiff challenges the constitutionality of three of the eleven laws comprising the package, including House Bill No. 5234 (2004 P.A. 40), Senate Bill No. 498 (2004 P.A. 34) and 502 (2004 P.A. 37), on the ground that they close Michigan's border to out-of-state waste. Verified Compl. at ¶ 82. Plaintiff asserts, among other things[3], that the Package violates the dormant commerce clause (Count I); the Foreign Commerce Clause (Count II); the Foreign Affairs Power (Count III). Plaintiff subsequently filed the Motion for Preliminary Injunction seeking an order enjoining Defendants from implementing and enforcing the package.

According to the Verified Complaint, some Michigan disposal facilities accept waste from New Jersey, New York, Ohio, Pennsylvania, Indiana, Illinois, Iowa, Maine, Missouri, New Hampshire, Wisconsin and Connecticut (the "sister states") as well as from Canada. Verified Compl. at ¶¶ 44, 50–57. In March 2004, the Michigan legislature approved and adopted eleven laws to amend the Natural Resources and Environmental Protection Act (NREPA). The Michigan Solid Waste Management Act governs the disposal of waste in the State of Michigan. MICH. COMP. LAWS § 324.11501 (1999) *et seq.* The package includes S.B. 57, 497, 498, 499, 500, 502, 506, 557 and 715 as well as H.B. 5234 and 5235.

As stated above, plaintiff says that three of the Public Acts have the effect of closing Michigan's border to out-of-state waste. Public Act 37 (Senate Bill 502), requires MDEQ by October 1, 2004 to:

a. Notify each state, Canada, and each province in Canada that the State will not accept solid waste that is not in conformity with state law;

b. Compile a list of those states, countries, and provinces, and local units of government that prohibit the same items from their disposal facilities that the State prohibits from its Disposal Facilities; and

c. Prepare and provide to each landfill in the State, a copy of the list of countries, states, provinces and local jurisdictions who prohibit from disposal the same items the State prohibits from disposal in its Disposal Facilities.

Public Act 40 (House Bill 5234), prohibits Facility Owners from disposing municipal solid waste generated outside the State unless:

(i) it comes from a jurisdiction of the MDEQ's approved list;

(ii) it was processed through a disposal Facility that documents it removed prohibited items; and

(iii) it is composed of a uniform material that otherwise meets standards for disposal in the State.

Plaintiffs in particular focus on the requirements that solid waste come from a comparable jurisdiction "on the MDEQ's approved list" or has been inspected and documented the removal of prohibited items.

---

of solid waste within Michigan. MWIA's members consist of nearly every private entity owning or operating a municipal solid waste landfill in Michigan, including some in Wayne County.

3. Other claims advanced by Plaintiff include that Senate Bill Nos. 57, 498, 500 and 502 are void for vagueness (Count IV); that Senate Bill No. 57 violates procedural due process (Count V); the contacts clause (Count VI) the Supremacy clause (Count VII); and separation of powers (Count VIII).

Finally, Public Act 34 (Senate Bill 498), confirms and consolidates the list of items the State prohibits from disposal in municipal solid waste landfills, including medical waste, yard clippings, used oil, lead acid batteries, low-level radioactive waste, regulated hazardous waste, liquid waste, sewage, PCBs and asbestos waste in municipal solid waste landfills. Further, it adds two new categories of prohibited items: beverage containers and whole motor vehicle tires (however, they are allowed in de minimis quantities).

### III. Legal Standard

■■■ The Court in denying the preliminary injunction looked to the four part test generally used by the Sixth Circuit which requires consideration of the following factors:

(1) the likelihood of the plaintiff's success on the merits;

(2) whether the injunction will save the plaintiff from irreparable injury;

(3) whether the harm to the plaintiff if relief is not granted outweighs the harm to others if relief is granted; and

(4) whether the public interest would best be served by the issuance of the injunction.

*Garrett v. Board of Educ. of School Dist. of Detroit*, 775 F.Supp. 1004, 1006 (E.D.Mich.1991), *citing In Re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). These four factors are not "prerequisites to be met"; rather, they are "factors to be balanced." *In Re DeLorean*, 755 F.2d at 1229.

### IV. Discussion

#### A. Court Hearings and the Record

Preliminarily, it should be noted that at the time the package became effective, the MDEQ had not yet put in place the procedures and forms detailing enforcement particularly the procedures to be followed for application by and determinations of which out-of-state jurisdictions have comparable landfill disposal prohibitions to assure that solid waste disposed of in Michigan landfills does not contain solid waste ineligible for disposition. Indeed, the subject of the MDEQ's action, or inaction, was first addressed at the hearing on September 24, 2004. At the hearing, the Court heard testimony from Phillip Roycraft of the MDEQ who described the difficulties in determining whether or not jurisdictions outside of Michigan were sending only eligible solid waste into Michigan and therefore the need to have a way of assessing that only eligible solid waste was being disposed of in Michigan landfills. Plaintiff also provided testimony of a general nature at the hearing, none of which illuminated or supported its constitutional claims. Because the MDEQ had not yet fleshed out the procedures and forms for implementing the package, the Court gave the MDEQ an opportunity to draft the necessary procedures, etc, for implementation and enforcement of the package. As a consequence, the effective date of the implementation of the package was put forward to November 1, 2004 and the MDEQ delayed taking any enforcement action regarding illegal solid waste.

On October 29, 2004, the Court held a further hearing on the application for preliminary injunction. At the hearing, the MDEQ's implementation procedures and forms reflected in Dx 1—45 were in evidence as well as plaintiff's exhibits Px 1—51. The declaration of Dr. G. Fred Lee, which was filed in conjunction with its brief amicus by the Sierra Club, was also before the Court. The parties at the hearing represented to the Court that the evidentiary record on which the Court was to make its decision was complete. Of particular importance as part of that evidentiary

record was Dx 45, a copy of which is attached as Exhibit A. This exhibit contains a list of and status of applications from jurisdictions outside of Michigan that have been reviewed by the MDEQ. Of note is the fact that the City of Tornoto has established that it has comparable landfill disposal limitations to those established by the package in Michigan for both household and commercial and industrial waste.

B.   Likelihood of Success on the Merits

### 1.

Plaintiff contends that the package discriminates against interstate and foreign commerce by impeding the free flow of non-Michigan waste into Michigan. According to plaintiff, the package creates an unlawful distinction between in-state waste, which automatically qualifies for disposal in Michigan under the package, and out-of-state waste, which does not.

Defendants disagree and assert that the package constitutes neutral waste disposal regulations that apply equally to in-state and out-of-state waste. Moreover, Defendants posit that any effect on interstate or foreign commerce is merely incidental.

Only two of the eleven laws, Public Act 40 and Public Act 37 refer to other jurisdictions and only Public Act 40 places any requirements on waste coming from other jurisdictions.

■   Solid waste is an article of commerce. *Fort Gratiot*, 504 U.S. at 359, 112 S.Ct. 2019 (1992); *City of Philadelphia*, 437 U.S. at 622–23, 98 S.Ct. 2531. The Commerce Clause empowers Congress "to regulate commerce with foreign nations, and among the several states." U.S. CONST. art. I, § 8, cl. 3. Case law recognizes that the limitation on a state's power to burden interstate and foreign commerce derives from the negative or "dormant" aspect of the Clause. *Gen. Motors Corp.*

*v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (citations omitted).

■   Unconstitutional regulation of the movement of interstate commerce violates the dormant "domestic" or "interstate" Commerce Clause, which prohibits states from " '[a]dvanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.' " *Fort Gratiot*, 504 U.S. at 359, 112 S.Ct. 2019. Moreover, unconstitutional regulation of the movement of foreign commerce violates the dormant "foreign" Commerce Clause. *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 61–62 (1st Cir.1999). State or local laws that burden foreign commerce " 'are subjected to a more rigorous and searching scrutiny.' " *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 404 (3d Cir.1987)(quotation omitted). This rule serves "the need of ensuring uniformity among the states in the area of foreign trade." *Id.* at 399.

■   Because the domestic and foreign aspects of the Commerce Clause are founded upon comparable principles, the same analysis may be employed with respect to domestic and foreign Commerce Clause challenges. The Supreme Court has constructed a two-step inquiry to guide courts evaluating the constitutionality of state or local laws under the Commerce Clause. *Or. Waste Sys., Inc. v. Dep't. of Quality of the State of Or.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); *Natsios*, 181 F.3d at 67 (applying the two-part test to foreign Commerce Clause challenge).

### 2.

■   Under the first step, the Court determines "whether the statute directly burdens interstate commerce or discriminates against out-of-state interests." *E. Ky. Res.*, 127 F.3d at 540. Discrimination

is defined as the "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (internal quotation marks and citation omitted). A statute can discriminate in three ways: "(a) facially, (b) purposefully, or (c) in practical effect." *Id.* (citation omitted).

■ Under the second step, the Court applies the proper level of constitutional scrutiny to the law at issue, depending on whether it is discriminatory or non-discriminatory. *SDDS, Inc. v. State of S.D.,* 47 F.3d 263, 268 (8th Cir.1995). A discriminatory law is presumptively invalid, and the legal standard applied is strict scrutiny. *Or. Waste Sys.,* 511 U.S. at 94, 114 S.Ct. 1345 (domestic commerce clause); *Natsios,* 181 F.3d at 70 (foreign commerce clause). If the law at issue is not discriminatory, it is reviewed under a balancing test. Where the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (citation omitted).

### 3.

■ Applying the above test, the plaintiff has not demonstrated a likelihood of success on the merits. As to whether the laws are discriminatory, Public Act 40 and 37 contain no overt distinctions between in-state and out-of-state waste, nor do they expressly bar the entry of out-of-state waste into Michigan. *Compare Fort Gratiot,* 504 U.S. at 355, 112 S.Ct. 2019 (New Jersey law prohibited the importation of most "solid or liquid waste which originated or was collected outside of the territorial limits of the State"). Moreover, the limitations on disposal of solid waste in Michigan landfills in terms of the items that may be disposed apply equally to solid waste originating in Michigan and to solid waste originating from jurisdictions outside of Michigan. Thus, they are facially neutral.

■ As to whether the laws purposefully discriminate, plaintiff relies on media statements from lawmakers which it says are indicative of bad intent, i.e. an intent to discriminate against out-of-state waste. Defendants argue that purpose behind these laws is better discerned by the legislature's own words as to their purpose which include the protection of the public health, safety and welfare and the environment from the improper disposal of waste that is prohibited from disposal in a landfill and to optimize recycling opportunities and the reuse of materials. At this point, the Court is not persuaded that the laws were enacted with a discriminatory purpose.

■ Finally, as to discriminatory effect, this remains an open question. As noted above, at the time of the filing of the complaint and motion for a preliminary injunction, the MDEQ had not yet established any procedures for implementation and enforcement. This process is still ongoing. It cannot be said on the record as it stands that the laws have a discriminatory effect. What can be said is that the package does not impose its will on jurisdictions outside of Michigan. No jurisdiction outside of Michigan is required to conform to Michigan law in order to transport its solid waste to Michigan. What is required—because of the difficulties associated with inspecting solid waste at the entrance to a Michigan landfill to assure that it does not contain prohibited items— is an assurance that the originating jurisdiction has comparable limitations or that the solid waste has been inspected and prohibited items have been removed. This

is a non-discriminatory health and safety measure and there appears to be no reasonable alternative.

Also, the record as it now stands, plaintiffs are relying on allegations of unconstitutional discrimination which are not supported by the relevant facts as the Court understands them. Michigan has the constitutional right to limit the composition of solid waste disposed in a Michigan landfill so long as the limitations are uniformly applied to in-state and out-of-state solid waste. Michigan also has the right to enforce these limitations by a regulatory scheme that does not unconstitutionally discriminate against out-of-state solid waste. The requirement that jurisdictions outside of Michigan have limitations on solid waste disposal in landfills comparable to those in Michigan does not discriminate against them. Nor is the requirement that out-of-state solid waste be inspected before being deposited in a Michigan landfill, a procedure specifically endorsed in by the Court of Appeals for the Seventh Circuit in *NSWMA v. Meyer*, 63 F.3d 652, 656 (7th Cir.1995):

> Wisconsin could realize its goals of conserving landfill space and protecting the environment by mandating that all

waste entering the State first be treated at a material recovery facility with the capacity to effect this separation.

These procedures on their face appear to be reasonable ways to keep ineligible solid waste from being disposed on in a Michigan landfill. That trial of plaintiff's claims may prove otherwise, is no basis for issuance of a preliminary injunction at this time.

### C. Remaining Factors

The record is silent as to the remaining factors of irreparable harm, injury to third parties, and the public interest. Plaintiffs have not filed affidavits or other evidence from an out-of-state waste haulers or jurisdictions alleging and/or describing the harm resulting from the package. Instead, plaintiffs simply argue that because Public Acts 40 and 37 are discriminatory, they are irreparably harmed. Since the Court has not found that these acts violate the Commerce Clause at this time, there is no basis for finding that plaintiffs will suffer irreparable harm or that third parties will be injured or the public interest will be harmed if a preliminary injunction does not issue.

EXHIBIT A

State of Michigan

DEQ, Department of Environmental Quality

Jurisdictions with Comparable Landfill Disposal Prohibitions

October 28, 2004

(Compiled from applications received through October 12, 2004)

| Country of Origin (United States or Canada) | State/Province | Jurisdiction of Origin (City, Township, Village, etc.) | Type of Waste Certified for | | Contact Person | Telephone |
|---|---|---|---|---|---|---|
| | | | Household | Commercial and Industrial | | |
| Canada | Ontario | Regional Municipality of Durham | Approved | Not Approved | Clifford Curtis | 905-668-7721 |
| Canada | Ontario | City of Owen Sound | Approved | Not Approved | Chris Hughes | 519-376-4274 |
| Canada | Ontario | Regional Municipality of Peel | Approved | Not Approved | Andrew Pollock | 905-791-7800, Ext. 4703 |
| Canada | Ontario | City of Toronto | Approved | Approved | Lawson Oates | 416-392-9744 |
| Canada | Ontario | Regional Municipality of York | Approved | Not Approved | Andrew Campbell | 905-830-4444, Ext. 5711 |
| United States | Wisconsin | State of Wisconsin | Approved | Not Approved | Richard Anosket | 262-253-8620 |